Good morning, your honors. Jason Carr appearing on behalf of the appellant Jose Alfredo Pallares-Galan. I'd like to reserve two minutes of my time for rebuttal if I may. The law allows a defendant in an unlawful re-entry prosecution to go back and take a second look at the removal since it is technically an element of the offense. That can be a complicated procedure. A lot of nuances come into play. Here the question is fairly simple. The question this court needs to ask is does his 1999 misdemeanor conviction for annoying a minor categorically qualify as an aggravated felony? And there are two prongs to that attack. The most important prong is does it qualify categorically? In other words, does the state statute of conviction comport with the federal definition of aggravated felony? In other words, is there any way to commit the California statute that doesn't comply with the federal definition? It's a California statute broader than whatever is covered in the federal statute, which could be the common law definition or it could be whatever it is. The question is does the California statute include more acts that constitute offenses than that? And we submit it does. The government says that this is annoying a minor. It doesn't require any sexually explicit conduct on behalf of the defendant whatsoever. The government argues that it does categorically qualify because it has this mens rea requirement that says that whatever annoying act a defendant is doing, he must be doing that in order to satisfy some purient interest or to sexually gratify himself. So in the California cases, we have an individual who engages in low-level stalking. He keeps following this girl around in his car. He's doing it to satisfy some kind of sexual impulse on his part so he can be convicted under the statute. Is the statute broad enough to bring into its reach something like, say, public urination? It would. Certainly it would, Your Honor. Public urination wouldn't technically because you wouldn't have the purient interest. You know, if you were just out there to relieve yourself and you had no sexual interest, technically you couldn't be convicted under the statute. The tragedy of this case is that's exactly what Pejars-Halland did was that he was urinating in public. How do we really know what he did? Because it's in his petition for clemency. And in reality, it's not relevant. Under the categorical approach, what he did, you know, ironically enough, isn't relevant because, you know, what the Supreme Court said in Taylor is that we don't want to have little mini trials and federal proceedings about what the guy actually did. What we do is we compare the federal definition. But it is referred to repeatedly by certainly by your side, not by the other, that that's what he did. And you're correct that it doesn't really matter what he did. What matters is what the statute says or what his papers say. But I think Judge Hawkins was, as am I, Judge Hawkins was curious as to whether that is a fact or just something that you keep saying. Well, I don't mean to keep saying it, but, you know, the judge. I don't mean just you. I mean, your side has it. Certainly, you're correct. The defendant or the petitioner has repeatedly said that that's what the actual offense was. Well, the question is, what does the statute say? And as I read the statute, which says that as I read the California case, which defines the statute, which is annoying, molested, synonymous and mean to disturb or irritate, especially by continued or repeated acts to vex, to trouble, to irk or to offend. It would cover any act that somebody did. You could send roses to somebody if you were vexing her and you got a sexual charge out of watching her get the roses. That's correct. Or you could write or love poetry. And that could be annoying the minor because you keep giving her poetry. And the California statute certainly covers that sort of conduct. Now, we have a uniform federal definition here. The whole categorical. Where do you find the uniform federal definition? I submit this Court hasn't adopted one yet. And this whole categorical approach is going to be this evolution in the law where eventually the courts of appeals are going to come up with uniform federal definitions for every enumerated offense that are in these recidivist statutes. So far, we don't really have a uniform definition for sexual abuse of a minor in this circuit. The Board of Immigration Appeals, which in this instance is probably the most important jurisdiction because that would have been to whom Peyaris appealed had he appealed, they have adopted a uniform federal definition. They use a fairly broad definition, and that's the federal definition contained in 3509A8 and A9. And they say, well, we need to have it. The Board of Immigration Appeals says we need to have uniformity in immigration law. We need to have a uniform definition. In Rodriguez-Rodriguez, they said, well, here is a good place to look. Here's this federal statute that defines sexual abuse of a minor, defines it in fairly broad terms, and this is the definition we want to adopt. Other circuits have made the New Scali decision, the Seventh Circuit, I believe. That's a great definition. Under the BIA definition, you say they've adopted a definition of? In Rodriguez-Rodriguez. And do you believe that the California statute comports with the Rodriguez-Rodriguez definition? The California definition is more broad than the federal definition that is provided in 3509A8 and A9. It defines sexual abuse as sexually explicit conduct and a bunch of other things that don't apply here. And then in 3509A9, they also talk about what does sexually explicit conduct mean, and they list out a whole laundry list of things, none of which apply to this statute. And it even includes libasious exhibition of genitals. So in a way, you know what, it's ironically enough what Peyaris did may actually qualify if we could look at the facts, but since we can only compare the definitions, it doesn't matter. Is there any bar to his right to attack this collaterally when he was ordered, sent out of the country earlier, and he didn't take an appeal from that? That's an interesting question, the exhaustion thing. The first thing I would say about that is that the government didn't really raise that issue below, and the district court never considered it. The second thing that I would say to that is usually in Herrera Blanco and other Ninth Circuit opinion here, what the court does is the government has to prove that he knowingly and voluntarily waived his right to appeal. Generally in this context, the courts say if there was some kind of challenge that the defendant didn't know about, that he wasn't informed about, that he didn't knowingly waive his right to appeal. And so here, I mean, if this is really an aggravated felony, then he knowingly waived his right to appeal. If it isn't categorically an aggravated felony, there's no way he could have known that, that he had that challenge. It's a legal challenge. It's just the immigration judge never told him about. The immigration judge has a duty to tell him that he has a good case and go on. Well, he does. This is not a criminal proceeding. I mean, the guys usually don't have lawyers in the CFR's regard that apply to removal, specifically say that the immigration judge is supposed to inform the alien of any form of a relief he may have. He told him he had a right to appeal. He told him he could appeal. He did tell him. And he said, here's the form or something like that. Right, but he didn't tell him that he would have any particular ground to do it. He said, look, you can appeal my decision. But he didn't say, well, but there's this categorical approach challenge, and maybe this isn't an aggravated felony, and he may want to take this up to the board to see if this is really an aggravated felony. I mean, this is a misdemeanor conviction, which is another issue that we have here, and I want to say, I have to sit down, that this court doesn't need to decide whether a misdemeanor could qualify as an aggravated felony to decide this case. But what's interesting is that when Peyaris would have appealed, the Board of Immigration Appeals at that time felt that they had to be felonies. A couple years later, they changed their mind and said, okay, we're going to now say that they can be misdemeanors. But had he appealed, it's likely he would have won because at the time he would have appealed, the Board of Immigration Appeals believed that sexual abuse of a minor conviction had to be felonies and they couldn't be misdemeanors. It's another aspect of this case. But I'm going to sit down and let the government speak right now. Good morning. May it please the Court. I'm Robert Bork of the United States. I'll address first the exhaustion issue that's been mentioned here. The government did, in fact, raise that in its first response, and that's contained at pages 35 and 36 of the excerpt of record. But quickly the focus became whether or not the defendant was statutorily prohibited from being able to appeal or qualify for relief from deportation, and that was what was argued from then on. So although it wasn't explicitly argued about further, it clearly was raised by the government and by implication the judge's order, again, not mentioning it, but finding that the 1999 annoying and molesting a child conviction was an aggravated felony, would have precluded and does preclude the defendant from any kind of cancellation of relief, and therefore if that's true, the immigration judge should not violate his rights by not telling him that he could appeal. Is that the standard, as Mr. Carr says, that the immigration judge should tell him he has a good case? Because this is not a felony, and therefore why don't you appeal here? I'm not aware of any cases that require the court to specifically say whether you have a good case, bad case, or whatever. I believe they're merely required to inform the alien that he has a right to appeal the decision. In this case, as you pointed out in the record, the forms were given to him to do that, and I think we have to look at his decision not to appeal in light of the fact that he was able to prepare an application for cancellation of removal between the... Does he have to have a knowing and considered waiver? Yes, it would have to be. Where do you find this waiver? I find the waiver in his action in not filing the papers that he was given by the immigration judge. He never said, I waive my right to appeal, I don't want to appeal, I give it up? I don't believe that's expressed in the record. So you find knowing and considered any time someone doesn't appeal and knows there's an appeal? No, I would suggest that in the facts of this case, the unique facts of this case, we have a defendant who at his first hearing in November 30, 1999, at that point he only had the other conviction mentioned, and the court said that you may qualify for cancellation of removal, and it encouraged the defendant to follow up on it. He filed an application for cancellation of removal between the two hearings the next time, December 17, 1999, and he was able to fill that out properly and to present that to the court. But nobody's saying he's not capable of filling out papers. The question is, is somebody, let's take someone who's capable of filling out papers, does he have a knowing and considered waiver every time he doesn't appeal, as long as he knows there is such a thing? Without other evidence, I would agree that that's not a valid waiver. Here when he was told of the decision and the appeal at the very end of this brief hearing, he came, you know, hoping, and he kept saying, well, I don't, you know, I didn't do anything. And then the judge says, he said, I don't understand. They said I did these things. So then the judge says to him, okay, well, you can get an attorney. You don't have to wait until you're out. You can get an attorney now to file an appeal, sue the authorities in California, then explains to him why he's doing it and why he's making his decision. And then when the man just learns what it is, he says, do you want to appeal? And then the man says, how long would it take to appeal? Well, I can't tell you how long it'll take, six to eight months. Then he says, I swear to God I haven't done anything. And if you give me an opportunity to leave OR, I'd fight this for my children who need me. Well, he says, I can't give you OR or leave, so it's up to you if you want to appeal. Then he said, it would be better if I leave my children. That's fine. That's all the discussion. And by obligation, I think he's saying. Is that when he waived it by not doing anything? Well, the defense claims that by the court telling him, I have to detain you, somehow coerced his decision. But under the law, the judge, the immigration judge had no authority but to detain him based upon his decision that his child molestation conviction was an aggravated felony. And so the defendant then made a choice. He was saying on the record, I'd like to get out for my children. The judge didn't have that authority. So then he says, well, in essence, for the better of my children, it's better that I not appeal and be deported. And then at that point, obviously, he could then support them or be with them in Mexico, not in the United States. So I think that's what he's talking about. Another fact from that, if I may correct, Your Honor, is that there were actually three hearings. The November 30th hearing only brought up his first conviction. That's when the judge said you may have cancellation grounds. Then the December 17th hearing is when he had filed that. But then the government then filed this 1999 child molestation. And his final hearing was on January 7th, 2000. So, again, he had three hearings, not just the two as you indicated. And, again, the whole record, I believe, shows that the defendant knew what his rights were. They were explained to him. And he did make a decision. Is there some other place his rights to appeal are explained? No, I'm not saying that, Your Honor. Okay. So all that was told about an appeal was at the end, this was a hearing to cancel the application he was told before he could make. And that hearing must have taken, what, three minutes? I don't know. There's no time on the list, Your Honor. I don't know. And at the end, they said, well, this is the first time anyone ever said you can appeal. And he's clearly distraught, and he's worried about his children. And so the judge says that's the final order. And we have to find a knowing, intelligent, and considered waiver. I understand the Court's position. All right. Well, let's get to the merits then. If I may, before we do that, since we are bringing up things that counsel has indicated we're not supposed to talk about, in pages 42 and 43 and 44 of the excerpts of record are the original charges against the defendant. There are four separate counts. And what I note is that three of those counts, counts 2, 3, and 4, in fact, did charge indecent exposure, which is the normal charge, I believe, for someone who is caught urinating in public. The first charge, though, the one that he pled guilty to, was expressly called child molesting and charged the misdemeanor statute that is the subject of this hearing today. So I think that the defendant claiming that's all he did, when, of course, we can't consider the facts anyway, but I think the record shows, the legal record that can be considered by the Court, shows that there were separate charges, one for indecent exposure and then one for child molesting. That doesn't mean they're separate acts, do they? You're not saying that. You're saying it could be the same act with two charges. But there had to be the act and the intent as required under California law. But the charge, does it charge more than what the California statute says? I'm sorry, General? The charge that you're referring to, the count 1, is it? Yes, Your Honor. That's on page 42. Is that, you know, that's basically restating the statute? That's correct. It merely stated that he did annoy and molest a child. There's no aid, really, in the examination we've been undertaking or we have to undertake. Well, there was a suggestion that – Hold on, hold on. Restating the statute as a count doesn't help with the problem of whether the statute is broader than the federal sex offense. Yes, Your Honor. I mean, there's nothing we can gain from looking at the count. There was a suggestion that someone could be convicted under the child molesting statute by merely urinating in public. I would suggest that that's not true. And I merely offered these charges to show that there are two different types of charges and that public indecency is more likely, urinating in public. And the other charge must have had some other facts as required by California law for him to be found guilty of that offense. It must have been something strange. He got 36 months summary probation and had to serve 180 days or something like that. That's correct, Your Honor. That seems to be a bit harsh if it was just urinating in the public. I agree. And another matter – I'm glad that the defense used the word stalking because really what this statute allows the government to do is to convict persons who are stalking children. The comment that if someone sent someone roses, that may be appropriate to an adult, but we have to keep in mind this statute only applies if someone's doing what they're doing. They're annoying them repeatedly to a child. And the California cases talk about annoying molest ordinarily related to offenses against children and with a connotation of abnormal sexual motivation. And that is the tenor of all the – California has another statute for sexual abuse of children, doesn't it? For a serious offense of sexual abuse of children, California has another statute, doesn't it? Yes. Like I say, I would put this – This is only for annoying children. I think the word stalking is more appropriate, and I think that's what it really covers, Your Honor. Because as indicated, again, in the Thompson case, the act of viewing – The statute 288A that says if there's any lewd or lascivious act involving children, including causing children to touch themselves, for instance, that's a felony. Right. A lewd or lascivious act involving children. So it's only when the act's just designed to annoy or irritate children. Well, if you have to look at the facts, for example, the case cited by the defendant, the Kongs case, is a photographer who then photographed children's crotches. He had them – young girls spread their legs. He had them sit suggestively and expose themselves. And so there was no touching there, so you couldn't be convicted of the felony. But clearly, I think, anyone would see this as annoying and molesting. You say Kong? I'm sorry? Which Kong you couldn't be convicted of? It's called People v. Kongs, Your Honor. It's cited at page 15 of my brief. Yes, right. And the Sheridan case is another example where the – The Kongs case, it says, annoy and molest are synonymous and meant to disturb – and mean to disturb or irritate, especially by continued or repeated acts, to vex, to trouble, to irk, or to offend. That's right. The Kongs is a case that says that's what the California statute means. That's correct. But I'm looking at the facts also to show that this could not be the felony you mentioned, but this statute does cover situations where there is only someone who is viewing but has to be viewing while he's acting in this irritating fashion, like the man who kept driving past the young girl, making hand gestures. No, no, there's no question the statute covers some acts that fall within the federal definition. No question. The problem is are all the acts which are covered by the statute within the federal definition. In other words, does the state statute have a broader reach? I understand that, but there is no federal definition that applies. Congress chose not to cross-reference this phrase, under-aggravated felony, to any other federal statute. So really, we are left with the California courts and just common sense and black's law dictionary, et cetera, that other cases use, and all of those, I think, would cover the statute completely. My time is up. Thank you. Thank you. I would like to point out that the two other federal courts of appeals have adopted the Board of Immigration's definition, the uniform federal definition, which, if this court adopts, it will be clear that this California statute is overbroad. The other thing I'd like to, and that is on page 17 of my reply brief, I cite Mugali and a lawyer, Luis, which is the Seventh Circuit. Mugali, I believe, is the Eleventh Circuit. Can I ask you one thing? Your opposing counsel gave us a paid citation where he says they did not fail to raise the question of the procedural default. You said they had not raised in the district court. Oh, the question was off. Yeah. Well, in the beginning of the government's brief, the only time it comes up is the government, in their first brief on this issue, puts in a bunch of boilerplate cases, and they say, well, here's a removal challenge, and they cite a case that says you have to exhaust in that boilerplate. But they never specifically say that my client didn't exhaust the issue. And the district court never considered it. It never came up. Which brings me to my last point, is that the government is arguing that we didn't preserve the issue of whether this conviction qualifies categorically. And I would note, if you look at the excerpt from record, pages 84 through 93, the district court and the government get into this extensive argument about whether or not it qualifies categorically. The district court didn't believe it did, and the government convinced them that the district court judged that it does qualify categorically. And on page 93, defense counsel says, well, Your Honor, our argument would be that the statute is overbroad, but we're primarily focusing on whether it has to be a felony or not. Which was reasonable at that time, because the board had held, at the time they were briefing it, that it had to be a felony. It wasn't until later that the law changed. Thank you. That's all I have. Thank you both very much. The case just argued will be submitted. The next case on the calendar, Balliot, is submitted on the briefs.
judges: Reinhardt, Siler, Hawkins